UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| KIMBERLY J. STIGALL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 10-27-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Kimberly J. Stigall ("Stigall" or "the Claimant") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 11, 12] Stigall argues that the Commissioner erred in finding that she was not disabled. She further asserts that the Administrative Law Judge ("ALJ") who conducted the administrative hearing did not give adequate weight to the opinion of her treating physicians and did not properly consider the combined effects of her impairments. Stigall seeks to have this matter remanded for an award of benefits or further factual findings on the issues raised in her summary judgment motion.

The Commissioner contends that the ALJ's decision applied the proper legal framework, is supported by substantial evidence, and should be affirmed. Having reviewed the administrative record and having considered the parties' arguments, the Court concludes that the ALJ failed to provide good reasons for not considering the opinion of a treating physician.

Accordingly, the Commissioner's motion for summary judgment will be denied, Stigall's motion will be granted, in part, and the case will be remanded for additional administrative proceedings.

**I.**

On June 25, 2007, Stigall filed applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. She has amended her alleged onset date to January 1, 2007. [Tr., p. 70] Stigall's claims were denied initially and upon reconsideration. [Tr., pp. 60–62, 65–68] Thereafter, an administrative hearing was held before ALJ Denise Pasvantis on November 18, 2008. [Tr., pp 406–35] Stigall appeared at the hearing along with her attorney, Rhonda Hatfield-Jeffers, and vocational expert ("VE") James Miller. [Tr., p. 39] In a decision dated June 29, 2009, ALJ Pasvantis found that Stigall was incapable of performing past work but that she was not under a disability as defined in the Social Security Act because she was able to perform other work that existed in significant numbers in the regional and national economy. [Tr., p. 22] As a result of this finding, the ALJ concluded that Stigall was not entitled to DIB or SSI. [Tr., pp. 22–23]

Stigall appealed the ALJ's decision to the Social Security Administration's Appeals Council. [Tr., pp. 8–10] The Appeals Council found that the ALJ "fully considered and evaluated the evidence and reached the appropriate conclusion on the issues." [Tr., p. 3] Accordingly, the Appeals Council denied Stigall's request for review, and the ALJ's decision became the final decision of the Commissioner. [Tr., p. 2] On January 22, 2010, Stigall brought

this action requesting the Court to either set aside the Commissioner's decision and award benefits or remand this case for further administrative proceedings.

**II.**

Stigall was 41 years old on the date of the ALJ's decision. [Tr., p. 23] She has a high school education and is able to communicate in English. [Tr., pp. 164, 412] Stigall has performed past work as a mental retardation aide, a grocery clerk, and a clerk. [Tr., p. 21] The VE described these types of work as (i) medium exertion and skilled, (ii) light exertion and semi-skilled, and (iii) light exertion and semi-skilled, respectively. [*Id.*] The VE testified that Stigall was no longer able to perform any of this past work, as it exceeds her residual functional capacity ("RFC"). [*Id.*]

Stigall's alleged disability stems from a combination of impairments. The ALJ found her to have: major depressive disorder with anxiety; diabetes millitus; hypothyroidism; B-12 deficiency; morbid obesity; chest discomfort; etiology unknown; and sleep apnea. [Tr., p. 14] She alleged that she was unable to work due to nervousness, inability to concentrate, memory problems, crying spells, irritability, poor hygiene, self isolation, difficulty sleeping, lack of energy, and appetite disturbance. [Tr., pp. 127; 131–136; 173; 253–54; 427] Stigall provided reports from a number of doctors: her primary physician, Dr. Dixon; her psychologist, Dr. Patel; and a mental health facility known as Adanta. In considering the medical evidence, the ALJ concluded that Stigall had an RFC:

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) and is able to understand, remember, and carry out simple or detailed tasks, sustain attention for simple and detailed tasks for 2 hour segments, interact occasionally with co-workers or supervisors and tolerate co-workers and

supervisors in a non-public setting, and adapt to changes as needed in a work setting that is not highly pressured.

[Tr., p. 15] The VE testified that an individual with Plaintiff's RFC and vocational profile is able to perform representative work as a cleaner, food preparer, small parts inspector, and hand packer. [Tr., pp. 21–22, 431–32] The VE further testified that these jobs existed in significant numbers in the national and regional economy. [Tr., pp. 431–32] Relying on this testimony, the ALJ found that Stigall was not disabled under the Social Security Act.

## III.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least

twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity and relevant past work to determine whether she can do past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence

as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they apply the proper legal standard and are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.

Stigall contends that the ALJ failed to apply the proper legal standard by neglecting to give proper weight to the opinions of her treating physicians. Stigall asserts that the ALJ failed to properly consider her mental health treatment records from both the Adanta evaluators and Dr. Patel. It is well-settled law that an ALJ must give "'good reasons . . . for the weight . . . given'" to the opinion of a treating source. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188, at *5 (1996). In giving weight to a particular medical opinion, the ALJ must look to a number of factors, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544. The ALJ's discussion should be based on evidence

in the record and "'be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188, at *5). Stigall claims that the ALJ failed to provide "good reasons" for the weight given to her treating physicians' opinions.

### A. Dr. Patel's Opinion

The ALJ provided sufficiently good reasons for the weight she gave to Dr. Patel's opinion. The ALJ found that Dr. Patel's opinion was not entitled to significant weight because it was inconsistent with the substantial evidence of record. [Tr., p. 19] The ALJ noted that Dr. Patel's opinion appeared to be based on Stigall's subjective complaints and not objective medical findings [*Id.*]. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that an ALJ could properly discount the opinion of a treating physician whose conclusions were based largely on the subjective complaints of a claimant who had been found to lack credibility). Additionally, the ALJ found that Dr. Patel's findings were not supported by objective medical findings or treating progress notes of record. [Tr., p. 19] *See Musaad v. Comm'r of Soc. Sec.*, No. 94-1546, 1995 U.S. App. LEXIS 27249 (6th Cir. Aug 29, 1995 (finding the ALJ properly rejected a treating physicians' opinions which were based on claimant's subjective complaints and not supported by objective clinical findings). In short, the ALJ explicitly evaluated Dr. Patel's opinion, and provided the good reasons for the weight she gave them. The ALJ applied the proper legal standard to Dr. Patel's opinions.

B.  **The Adanta Records**

The ALJ did not give the same amount of thought and discussion to the opinions of the practitioners at Adanta. The records from Adanta [Tr. p. 234–270] show that Stigall was seen and evaluated regularly by both a psychiatrist — Dr. Alan Myers, M.D. — and a licensed professional counselor ("LPCA"). Dr. Myers conducted a full psychiatric evaluation on January 25, 2008. [Tr., p. 252–55] Dr. Myers also completed seven more assessments of Stigall during a period from January 25, 2008 until July 18, 2008. [Tr., p. 237, 238, 240–41, 244, 246, 247, 248, 251] An LPCA conducted similar assessments on eight more occasions during that time. [Tr., pp. 234, 235, 236, 239, 240–41, 245, 249, 250]

The ALJ did note Stigall's treatment at Adanta and some of the practitioners' assessments when summarizing Stigall's medical history.

> In January 2008, the claimant was sent to ADANTA by the lawyer that was handling her Social Security appeal. She reported her mother had died in 2002 and her husband and daughter had been ill. She was assessed with anxiety disorder, sick sinus syndrome by report; obesity and sleep apnea by report. In April 2008, the claimant said Cymbalta worked better than either Zoloft or Paxil and the following month, she was doing better with Cymbalta. In June 2008, she indicated she did not want to be around people and she described having sweats and getting nervous. Her medication dosage was adjusted and when seen on follow-up she indicated she was doing all right. In August 2008, she said she had trouble sleeping and she still had a lot of anxiety when in public around people.

[Tr. p. 18] Stigall claims that Dr. Myers provided additional medical opinions which the ALJ did not address in this summary, or elsewhere in the opinion, such as assigning a GAF score of 50. [Record No. 11, p. 8; Tr., p. 255] Stigall also contends that it was error not to consider statements by the LPCA that she was "'Severely Mentally Ill' because there was 'clear evidence of serious impairment (dysfunction) in at least two areas,' and that '[c]linically significant

-8-

symptoms of mental illness have persisted . . . for a continuous period of at least two (2) years,' and 'there is a history of one or more episodes with marked disability and the illness is expected to continue for a two-year period of time.'" [Record No. 12, p. 8–9; Tr. p. 269]

The Commissioner responds that neither opinion was entitled to significant weight. The Commissioner argues that LPCAs are not "acceptable medical sources" within the applicable regulations and, therefore, their opinions are not entitled to significant weight. *See* 20 C.F.R. §§ 404.1502, 404.1513(a), 416.902, 416.913(a). The Commissioner then claims that Dr. Myers' is an acceptable medical source, but his January 2008 evaluation is not a medical opinion because it does not include any opinions regarding the Claimant's functional limitations. *See* 20 C.F.R. §§ 404.1527, 416.927.

### 1. The LPCA's Opinions

The Commissioner is correct that an LPCA is not an acceptable medical source within the definition set forth by the regulations. 20 C.F.R. § 404.1513(a) lists the categories of medical professionals who are considered "acceptable medical sources." Counselors, even licensed professional counselors, are not listed. 20 C.F.R. §§ 404.1513(a); 416.913(a). Numerous courts have affirmed the rule that counselors are not "acceptable medical sources." *See, e.g., Rolfe v. Astrue*, No. 10-06-B-W, 2010 U.S. Dist. LEXIS 116303 (D. Me. Oct 31, 2010) ("Hirshberg, a counselor, does not qualify as an "'acceptable medical source' for Social Security purposes"); *Redden v. Comm'r of Soc. Sec.*, No. 1:09-330, 2010 U.S. Dist. LEXIS 92602 (S.D. Ohio Mar. 30, 2010) (holding that counselors and social workers are "other" non-medical sources, not "acceptable medical sources"); *Parker v. Astrue*, No. 2:08-119, 2009 U.S. Dist. LEXIS 84559

(E.D. Ark. Sept. 15, 2009) ("Licensed Professional Counselors . . . are not 'accepted medical sources.' Instead, they are 'other sources' just as relatives and neighbors who provide evidence."(internal citations omitted)). Therefore, the opinions of the LPCA at Adanta were not required to be considered in the same light as the opinion of a treating physician, and the ALJ was under no compulsion to provide "good reason" for discounting them.

### 2. Dr. Myers' Opinion

In contrast to the LPCA, the Commissioner agrees that Dr. Myers is an acceptable medical source. [Record No. 12, p. 5] Nevertheless, the Commissioner asserts that Dr. Myers' January 25, 2008 evaluation is not a "medical opinion" because it does not include any opinions regarding Plaintiff's functional limitations or what she can do despite her impairments. [Record. No. 12, p. 5]; *see* 20 C.F.R §§ 404.1527, 416.927. Stigall argues that Dr. Myers did evaluate the severity of her impairments and provided a diagnosis as to her functional limitations, assigning Stigall a Global Assessment Functioning ("GAF") Scale score of 50. [*See* Tr. p. 255] Stigall claims that a GAF of 50 indicates "serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." [Record No. 12, ex. 1] Accordingly, she argues, Dr. Myers did provide a medical opinion, but the ALJ failed to address that opinion or provide "good reasons" for the weight given it.

20 C.F.R. § 404.1527 defines "medical opinions." "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), *including* your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."

20 C.F.R. § 404.1527(a)(2) (emphasis added); *see also* 20 C.F.R. § 416.927. A Social Security Ruling explains that an opinion need not contain *all* of these elements to be a "medical opinion," a source that provides at least one qualifies. Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188, at *2 (stating that a treating source will often have more than one medical opinion, including "at least one diagnosis, a prognosis, and an opinion about what the individual can still do"). Dr. Myers' report clearly discusses the nature and severity of Stigall's impairment; that is precisely what the assignment of a GAF score accomplishes. [*See* Record No. 12, ex. 1] Dr. Myers also provided a diagnosis on four additional axes [Tr. p. 255] and a prognosis of "guarded." [*Id.*] He, at length, evaluated her mental status and symptoms. [Tr. p. 254] Dr. Myers' opinion includes many of the elements which constitute a "medical opinion" within the definition of 20 C.F.R. § 404.1527(a)(2). Because Dr. Myers is an acceptable medical source and treating physician offering a medical opinion, the ALJ was required to provide "good reasons" for the weight she gave it.

However, a review of the administrative record reveals that the ALJ failed to provide any justification for the weight provided Dr. Myers' opinion. It was not discussed beyond the short summary highlighted above and was given no analysis. This failure not only violates the rule requiring that, absent "good reasons", significant weight be given to the opinion of a treating source, *see* 20 C.F.R. § 404.1527(d)(2), it violates an "additional procedural requirement associated with the treating physician rule." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). The procedural requirement requires the ALJ to clearly articulate both the weight given to a treating physician's opinion and the reasons for giving it that weight. *Bowling*

*v. Comm'r of Soc. Sec.*, No. 2:07-701, 2008 U.S. Dist. LEXIS 77983, at *16 (S.D. Ohio, Sept. 11, 2008). "Where the Commissioner does not follow this procedural requirement at the administrative level, the Court cannot simply fill in the required analysis based on the evidence of record." *Id.* at *16–17. Rather, "[b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). In other words, when the ALJ does not provide any analysis for why a particular opinion was rejected, the Court must remand, even if substantial evidence otherwise supports the ALJ's decision. *See Hall v. Comm'r of Soc. Sec.*, 148 Fed. App'x 456, 461 (6th Cir. 2005). That is precisely the case here. While good reasons may exist for rejecting the opinion of Dr. Myers, the ALJ failed to discuss those reasons. The Court cannot review whether the ALJ properly reached her conclusion, even if correct, when she fails to "show her work."

If an ALJ does not give good reasons for rejecting the opinion of a treating source, remand *may* not be required if the violation was only *de minimis* — if the error was harmless. *Wilson*, 378 F.3d at 547. However, the court in *Wilson* stated that "[a] court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." *Id.* at 546. In other words, "a procedural error is not made harmless simply

because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Mazaleski v. Treusdell*, 183 U.S. App. D.C. 182, 562 F.2d 701, 719 n.41; *see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 102 F.3d 1385, 1390 (5th Cir. 1996). The *Wilson* court did identify three circumstances where a procedural error may be harmless: (1) "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of § 1527(d)(2) — the provision of the procedural safeguard of reasons — even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547. None of those circumstances are present in this case. The ALJ did not agree with the opinion of Dr. Myers, nor can that opinion be said to "so patently deficient" that the Commissioner could not possibly credit it. Finally, the Court does not believe that the opinion properly provided reasons elsewhere that would explain to the Claimant why Dr. Myers' opinions were rejected. *See Hall*, 148 Fed. App'x at 462 ("The provision of reasons also helps explaion the outcome of an adverse ALJ decision to a claimant whose physician indicated he was disabled, and thus 'might be especially bewildered when told by an administrative bureaucracy the [he] is not.'" (citing *Wilson*, 378 F.3d at 544)). Thus, the error in this case is not *de minimis*, and the Court must remand for further consideration of Dr. Myers' opinion.

### C. Substantial Evidence

If the Court concludes that the ALJ improperly applied, or failed to apply, a legal standard, then the Court need not reach the substantial evidence question. *Preslar v. Sec'y of*

*Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1967) (noting that "facts must be evaluated by the administrator in light of correct legal standards to entitle the administrative finding to the insulation of the substantial evidence test," and that "when the fact finder has failed to employ the proper legal standard in making its determination the finding may not stand" (internal citations omitted)). Because the ALJ did not apply the correct legal standard and failed to provide good reasons for the rejection of Dr. Myers' opinion, the Court need not address the question of whether the ALJ's decision was supported by substantial evidence.

**V.**

For the reasons discussed above, it is hereby

**ORDERED** as follows:

1. Plaintiff Kimberly J. Stigall's Motion for Summary Judgment is **GRANTED**, in part.

2. Defendant Michael Astrue's Motion for Summary Judgment is **DENIED**.

3. This matter is **REMANDED** to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), consistent with this Memorandum Opinion and Order.

This 10th day of January, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge